

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**EDWARD HENRY LATIMER, III,**

        Petitioner,

v.                                                **CRIMINAL NO. 4:17-cr-65-12**

**UNITED STATES OF AMERICA,**

        Respondent.

*MEMORANDUM OPINION & ORDER*

Before the Court is Edward Henry Latimer, III's ("Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Pet'r's Mot. Compassion. Release, ECF No. 505 ("Pet'r's Mot."). The Government opposed the motion and Petitioner replied. Gov't Resp. Opp. to Pet'r's Mot. Compassion. Release, ECF No. 509 ("Resp. Opp."); Pet'r's Reply to Gov't Resp. Opp. to Pet'r's Mot. Compassion. Release, ECF No. 511 ("Pet'r's Reply"). This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED.**

      **I.**      **FACTUAL AND PROCEDURAL HISTORY**

On March 14, 2018, Petitioner was named alongside eleven co-defendants in a twenty-count Second Superseding Indictment, which charged him with three counts: Count Two charged Petitioner with Conspiracy to Distribute and Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 846 and 841; Count Three charged Petitioner with Conspiracy to Launder Money, in violation of 18 U.S.C. § 1956(h); and Count Nineteen charged Petitioner with Possession with Intent to Distribute and Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1). Second Sup'g Indict., ECF No. 175 ("Indictment"). On July 9, 2018, Petitioner pled guilty to Count Two of the Indictment. *See* Guilty Plea Felony Indict. Min., ECF No. 267; Plea Agreement, ECF No. 268; Order Acc'g Plea of Guilty, ECF No. 270. According to the Plea Agreement, Count Two charged

Petitioner with Conspiracy to Possess with Intent to Distribute More than 1000 Grams of Heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). Plea Agreement ¶ 1.

According to his Presentence Investigation Report, Petitioner conspired with co-defendant William Arthur Joe and others, all of whom were members of the "Joe drug trafficking organization," in a conspiracy to distribute and did distribute more than one kilogram of heroin. Present. Investig. Rep. ¶ 19, ECF No. 413 ("PSR"). Petitioner and others effected the conspiracy by transporting, selling, and distributing large quantities of heroin from New York and/or Georgia to Virginia, along with laundering drug proceeds through a liquor store business in Atlanta, Georgia. *Id.* Petitioner, specifically, aided co-defendant William Arthur Joe by driving him to receive and thereafter to distribute heroin to users and mid-level dealers. *Id.* Petitioner was also involved with other members of the conspiracy in efforts to obtain heroin from sources of supply outside of New York. *Id.* To this end, on April 8, 2017, law enforcement stopped Petitioner and another individual in Stafford County, Virginia with approximately ¼ kilogram of fentanyl. *Id.* On April 17, 2017, Petitioner admitted to his involvement in the conspiracy to members of the investigative team. *Id.* The PSR attributed Petitioner with a total of 227.54 grams of fentanyl and 676.5 grams of heroin. *Id.* at ¶ 25.

The PSR included documentation from the Western Tidewater Regional Jail, which noted Petitioner's health problems as diabetes, hypertension, and chronic cardiac, for which he was taking medication. *Id.* at ¶ 62. Petitioner reported that he had suffered from anxiety since 2013 and was prescribed Xanax at one point to address it, but he stopped taking it when he became addicted to prescription pain medication. *Id.* Petitioner also reported a history of drug addiction and abuse with Oxycodone, prescription pain medication, and heroin. *Id.* at ¶ 65. He reported having overdosed on fentanyl in June 2017. *Id.*

The PSR assessed Petitioner with a total offense level of 27, a criminal history category of V, and a recommended Guidelines provision of 120 to 150 months' imprisonment. *Id.* at ¶¶ 80-81. On December 3, 2018, this Court sentenced Petitioner to 120 months' (10 years) imprisonment, followed by five (5) years of supervised release. J. of Pet'r, ECF No. 430. Petitioner is currently incarcerated at FCI Petersburg Medium with a projected release date of January 27, 2026[1], and with eligibility for home detention on July 27, 2025. Pet'r's Mot. 1, 3, Ex. 2; Resp. Opp. 5. As of the date of this opinion, Petitioner will be released in approximately fifty (50) months and has served approximately half of his sentence. *Id.*

On August 28, 2020, Petitioner submitted a Request for Compassionate Release/Reduction in Sentence to the Warden of FCI Petersburg Medium. Pet'r's Mot. Ex. 3. On September 3, 2020, the Warden denied Petitioner's request. *Id.* at Ex. 4. Accordingly, on May 19, 2021, Petitioner filed a *pro se* motion for compassionate release. Letter Mot. Compassion. Release, ECF No. 496. On August 5, 2021, Petitioner filed the motion through counsel. Pet'r Mot. On August 18, 2021, the Government responded in opposition. Resp. Opp. On August 23, 2021, Petitioner replied. Pet'r's Reply. At age 42, Petitioner alleges that his Type 2 diabetes with hyperlipidemia, hypertension, and obesity are serious health conditions that are compounded by the current pandemic. Pet'r's Mot. 1. He alleges that his underlying conditions and conditions of confinement make him particularly susceptible to contracting COVID-19. *Id.* at 1-2. Further, he alleges that the sentencing factors under 18 U.S.C. § 3553(a) support compassionate release. *Id.* at 2. Together, Petitioner alleges these circumstances constitute extraordinary and compelling reasons that warrant his release. *Id.* Accordingly, Petitioner requests that the Court grant him compassionate release. *Id.*

---

[1] *See also* Federal Bureau of Prisons, "Find An Inmate," *BOP.gov*, https://www.bop.gov/inmateloc/ (last visited Nov. 16, 2021) (listing Petitioner's release date as Jan. 27, 2026).

## II. LEGAL STANDARD

### A. The Threshold Requirement

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the BOP bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

## B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts . . . ."); *United States v. Fox*,

2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp. On August 28, 2020, Petitioner submitted a Request for Compassionate Release to the Warden of FCI Petersburg Medium. Pet'r's Mot. Ex. 3. On September 3, 2020, the Warden denied Petitioner's request. *Id.* at Ex. 4. On May 19, 2021, Petitioner filed a *pro se* motion for compassionate release. Letter Mot. Compassion. Release. On August 5, 2021, Petitioner filed the motion through counsel. Pet'r Mot. Thus, more than 30 days passed since Petitioner filed his request.

#### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020

6

WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. At 42-years old, Petitioner argues that his type 2 diabetes mellitus, hyperlipidemia, hypertension, and obesity place him at increased risk of serious illness should he contract COVID-19. Pet'r's Mot. 1, 6. According to his medical records, Petitioner's diabetes is "not controlled" and he is insulin dependent. Sealed Bureau of Prisons Med. Rs. 4, ECF No. 507 ("Med. Rs."). Petitioner contends that even with his insulin injections, his glucose and hemoglobin numbers are well above target levels. Pet'r's Mot. 6. However, Petitioner's medical records also demonstrate that he does not always take his morning insulin and he has a history of noncompliance with his insulin medications. Med. Rs. 4, 10. Indeed, during a visit with Health Services on December 4, 2020, the attending physician discussed Petitioner's lack of compliance with him and "strongly advised" him to come into compliance. *Id.* at 4, 7. During that visit, the physician also advised Petitioner to watch his diet and increase his exercise. *Id.* at 9. Further, Petitioner's medical records reflect that his hypertension and hyperlipidemia are under control with medication. *Id.* at 4-5.

Additionally, Petitioner has a Body Mass Index ("BMI") of 33.5 kg/m and a history of substance abuse. Pet'r's Mot. 7, 10. According to the Centers for Disease Control and Prevention ("CDC"), obesity (BMI ≥30 kg/m but < 40 kg/m) and current substance abuse disorders can make an individual more likely to get severely ill if they should contract COVID-19.[2] In addition to

---

[2] *See* Centers for Disease Control and Prevention, "COVID-19: People with Certain Medical Conditions," *CDC.gov*, (last updated Oct. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

preventative measures against COVID-19, the CDC also recommends that individuals with underlying medical conditions follow their treatment plans to keep their medical conditions under control and thereby lower their already-increased risk of infection.[3] Based on his medical records, however, the only underlying condition that is not under control is Petitioner's diabetes; it is unclear whether this would still be the case if Petitioner were compliant with his insulin medication. Further, Petitioner states that he has a history of substance abuse, and not that he currently has a substance abuse disorder. Pet'r's Mot. 10. Petitioner also argues that the Court should consider the BOP's "inability to adequately address [Petitioner's] health conditions." Pet'r's Mot. 8. Yet, Petitioner fails to articulate whether his facility or the care he has received, specifically, is inadequate.

Moreover, as Petitioner concedes, he has not contracted COVID-19 while in prison and, as of February 16, 2021, he received both doses of the Moderna COVID-19 vaccine. Pet'r's Mot. 20; Med. Rs. 43. According to the CDC, the COVID-19 vaccine is "effective at preventing COVID-19 as seen in clinical trial settings."[4] Although individuals who are vaccinated may still contract COVID-19, they are significantly less likely to experience severe symptoms or be hospitalized as compared to unvaccinated individuals. *Id.* Petitioner has not reported any side effects to the vaccine. Therefore, Petitioner has not provided evidence showing that he is at high risk for serious illness due to COVID-19 which warrant extraordinary circumstances for compassionate release. *See United States v. Madison*, No. 2:17-cr-80, ECF No. 88 (E.D. Va. Mar. 19, 2021).[5]

---

[3] *Id.*

[4] *See* Centers for Disease Control and Prevention, "Ensuring COVID-19 Vaccines Work: Vaccine Effectiveness," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html.

[5] Sister jurisdictions have similarly held that because the defendant "has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition that is terminal or severely limits his ability to function in a correctional setting." *United States v. Burks*, No. 3:14-cr-208-MOC-1, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021); *see United States v. Smith*, No. 17-cr-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021), *appeal docketed*, No. 21-1209 (6th Cir. Mar. 2, 2021) ("[A]bsent some shift in the scientific consensus, Defendant's

Second, however, Petitioner does show a potential risk of contracting the disease at his prison facility. That is, even if Petitioner were vaccinated, there would still exist a possibility that he *could* contract COVID-19. As of November 23, 2021, the BOP has reported a total of 234 recovered positive cases of COVID-19 for inmates (0 current, 1 death) and 22 recovered cases (2 current) for staff at FCI Petersburg Medium.[6] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, overall, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner was a member of the "Joe drug trafficking organization," through which he conspired to and did distribute more than one kilogram of heroin. PSR ¶ 19. This conspiracy involved transporting, selling, and distributing large quantities of heroin across state lines and through multiple states, along with laundering drug proceeds. *Id.* Although Petitioner notes that he did not have an active leadership role, Pet'r's Mot. 25, Petitioner nonetheless

---

vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).").

[6] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/ (last visited Nov. 23, 2021).

participated in the conspiracy by regularly driving to receive and thereafter to distribute heroin to users and mid-level dealers. PSR ¶ 19. When ultimately stopped by law enforcement, Petitioner had approximately ¼ kilogram of fentanyl. *Id.* Overall, the PSR attributed Petitioner with 227.54 grams of fentanyl and 676.5 grams of heroin. *Id.* at ¶ 25.

Prior to the instant offense, Petitioner also received multiple drug and theft convictions including possession of marijuana, possession with intent to distribute marijuana, petit larceny, grand larceny, breaking and entering, and common law robbery. *Id.* at ¶¶ 44-50. While under supervision for grand larceny and breaking and entering, Petitioner had four probation violation hearings. Petitioner also committed the instant offense while under a criminal justice sentence and after serving 4 ½ years in prison. Further, as the Government notes, Petitioner's crimes have become increasingly serious over time. Resp. Opp. 14. This trend cuts against Petitioner's argument that he is less likely to recidivate. Pet'r's Mot. 25. According to his PSR, Petitioner was assessed a total offense level of 27, a criminal history category of V, and a recommended guideline provision of 120 to 150 months' imprisonment. PSR ¶¶ 80-81. To date, Petitioner has only served about 50% of his 120-month sentence, with a projected release date of January 27, 2026. Pet'r's Mot. 3. Accordingly, early release would not provide adequate deterrence or punishment for his offense. *See United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (denying compassionate release where the defendant had "served only 40% of his 188 month sentence, which may not afford adequate deterrence to his criminal conduct").

To his credit, Petitioner has earned his GED and completed several drug education programs. Pet'r's Mot. Ex. 5. Moreover, Petitioner has only received one disciplinary infraction while incarcerated. *Id.* The Court also notes that there has been limited programming available due to COVID-19 lockdowns. However, as noted by sister courts, a "defendant's rehabilitation alone

proves insufficient to warrant a sentence reduction." *See United States v. Woolridge,* No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021); *see also United States v. Ahmad,* No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison").

Overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner did not show extraordinary or compelling reasons for release due to COVID-19. Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release, ECF No. 505, is **DENIED.** Furthermore, Petitioner's *pro se* Motion for Compassionate Release, ECF No. 496, is **Moot**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Newport News, Virginia
December 8, 2021

Raymond A. Jackson
United States District Judge
UNITED STATES DISTRICT JUDGE